# In the United States Court of Federal Claims

No. 14-663C
Filed: January 21, 2015

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| BROCADE COMMUNICATIONS SYSTEMS, INC. | \* \* \* \* | Competition in Contracting Act of 1984, 41 U.S.C. § 3301 *et seq.* ("CICA") (2011); Federal Acquisition Regulations ("FAR"), |
| Plaintiff, | \* \* \* | § 16.505(a)(4)(i) (Ordering); § 33.101 (Definitions); Jurisdiction; Motion to Dismiss, Rule 12(b)(1), |
| v. | \* \* | Rule 12(b)(6); United States Constitution, Art. III, |
| THE UNITED STATES, | \* \* | § 2, cl. 1; 28 U.S.C. § 171 (Appointment and |
| Defendant. | \* \* \* | number of judges; character of court; designation of chief judge). |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Gregory S. Jacobs,** Polsinelli, PC, Washington, D.C., Counsel for Plaintiff.

**Kenneth D. Woodrow,** United States Department of Justice, Civil Division, Washington, D.C., Counsel for the Government.

### MEMORANDUM OPINION AND FINAL ORDER

### I.      RELEVANT FACTUAL BACKGROUND.[1]

On May 28, 2014, the United States Environmental Protection Agency ("EPA") published Request For Quotation 179418 ("RFQ 179418") to purchase Cisco Systems, Inc. ("Cisco") manufactured switching and routing equipment, pursuant to the National Aeronautics and Space Administration Solutions for Enterprise-Wide Procurement IV ("SEWP") government-wide acquisition contract. Compl. ¶ 15; Compl. Ex. 5. The SEWP contract was designated as an indefinite delivery/indefinite quantity ("IDIQ") contract under which awardees would be considered for information technology and audio visual technology and services contracts. Compl. Ex. 7. Neither Brocade Communications Systems, Inc. ("Brocade") nor Cisco were parties to a

---

[1] The relevant facts were derived from Plaintiff's July 29, 2014 Complaint ("Compl.") and the exhibits attached thereto ("Compl. Ex.").

SEWP contract, but Plaintiff, Cisco, and other networking equipment manufacturers receive substantial revenue from authorized resellers that hold SEWP contracts.  Compl. ¶¶ 4, 15.

On the same date RFQ 179418 was posted, the EPA also included a Justification In Support of Limiting the Acquisition to Cisco Products ("Brand-Name Justification"), pursuant to Federal Acquisition Regulation ("FAR") § 16.505(a)(4)(i).[2]  Compl. ¶ 16; Compl. Ex. 1, at 2–4.  The RFQ set forth the reasons why the Brand-Name Justification was required, *i.e.*, that a multi-manufacture environment "would hinder the operation of and pose risk to the Agency's networking infrastructure"; "non-Cisco items may potentially void existing warranties on currently installed equipment"; and  non-Cisco items were alleged to increase costs to the EPA.  Compl. Ex. 1, at 2 ("Using any other network infrastructure hardware brand is cost prohibitive at this time and would require an EPA-wide network redesign, EPA Federal and support contractor training, and new management tools for monitoring and managing non-Cisco devices.").

## II.   PROCEDURAL HISTORY.

On June 5, 2014, Plaintiff filed an agency-level protest with the EPA disputing the decision to exclusively procure Cisco brand-name switching and routing equipment.  Compl. ¶ 17; Compl. Ex. 6.  On July 9, 2014, the EPA dismissed Plaintiff's protest "for lack of standing."  Compl. ¶ 18; Compl. Ex. 7.  The EPA, however, asserted that, because Plaintiff was not a SEWP contract holder, Plaintiff was "[in]eligible to compete or receive an order under [RFQ 179418]."  Compl. ¶ 18; Compl. Ex. 7.  The EPA also stated that Plaintiff also was not an interested party, pursuant to FAR § 33.101.[3]  Compl. ¶ 18; Compl. Ex. 7.

On July 21, 2014, Plaintiff filed an appeal of an agency-level protest with the EPA.  Compl. ¶ 19.

---

[2] FAR § 16.505(a)(4)(i), in relevant part, provides:

> The contracting officer must justify restricting consideration to an item peculiar to one manufacturer (*e.g.*, a particular brand-name, product, or a feature of a product that is peculiar to one manufacturer).  A brand-name item, even if available on more than one contract, is an item peculiar to one manufacturer.  Brand-name specifications shall not be used unless the particular brand-name, product, or feature is essential to the Government's requirements and market research indicates other companies' similar products, or products lacking the particular feature, do not meet, or cannot be modified to meet, the agency's needs.

48 C.F.R. § 16.505(a)(4)(i).

[3] FAR § 33.101, in relevant part, provides:

> "Interested Party for the purpose of filing a protest" means an actual or prospective offeror whose direct economic interest would be affected by the award of a contract or by the failure to award a contract.

48 C.F.R. § 33.101.

On July 21, 2014, Plaintiff also filed a protest with the United States Government Accountability Office ("GAO"), contesting the EPA's use of the Brand-Name Justification. Compl. ¶ 20; Compl. Ex. 8. On July 25, 2014, the GAO dismissed Plaintiff's protest, because "this challenge to the terms of a solicitation for a delivery under an ID/IQ contract is not a matter within our Office's jurisdiction, and also because the protester is not an interested party to challenge the terms of the solicitation." Compl. Ex. 9, at 1.

On July 29, 2014, Plaintiff filed a Complaint in the United States Court of Federal Claims ("Compl."), requesting a declaration that the EPA's actions violated the Competition in Contracting Act of 1984 ("CICA") and FAR § 16.505(a)(4)(i). Compl. ¶ 2. The July 29, 2014 Complaint requests that the court issue a permanent injunction prohibiting the EPA from awarding a task order for Cisco brand-named network infrastructure equipment, pursuant to RFQ 179418, or any other contractual means, until the EPA conducts market research as to whether other manufacturers can meet the EPA's requirements and determine whether there is any statutory basis to restrict competition. Compl. ¶ 2.

On July 30, 2014, during a telephonic status conference, the EPA informed the court that it intended to take corrective action. Gov't Mot. at 2. On August 15, 2014, the EPA filed a Notice Of Corrective Action ("Gov't Notice"), stating that the "EPA has cancelled the RFQ and proposes to postpone its acquisition of network infrastructure equipment until it performs market research determining whether EPA's needs can be satisfied by products of other manufacturers, including [Plaintiff]." Gov't Notice at 1.

In addition, on August 15, 2014, the Government filed a Motion To Dismiss On Grounds Of Mootness, pursuant to RCFC 12(b)(1) and 12(b)(6) ("Gov't Mot."), because the court did not have subject matter jurisdiction, since the EPA's corrective action afforded Plaintiff precisely the relief it sought in the July 29, 2104 Complaint, *i.e.*, "cancelation of RFQ and postponing its acquisition of network infrastructure equipment until EPA performs market research determining whether EPA's needs can be satisfied by products of other manufacturers, including [Plaintiff]." Gov't Mot. at 4. On September 4, 2014, Plaintiff filed a Response ("Pl. Resp."), arguing that the court retains jurisdiction until such time as the EPA performs the corrective action. Pl. Resp. at 1. On September 22, 2014, the Government filed a Reply ("Gov't Reply").

### III.   DISCUSSION.

#### A.   Jurisdiction.

The United States Court of Federal Claims has jurisdiction under the Tucker Act, 28 U.S.C. § 1491, "to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). The Tucker Act, however, is "a jurisdictional statute; it does not create any substantive right enforceable against the United States for money damages . . . . [T]he Act merely confers jurisdiction upon [the United States Court of Federal Claims] whenever the substantive right exists." *United States v. Testan*, 424 U.S. 392, 398 (1976).

To pursue a substantive right under the Tucker Act, a plaintiff must identify and plead an independent contractual relationship, Constitutional provision, federal statute, and/or executive agency regulation that provides a substantive right to money damages. *See Todd v. United States*, 386 F.3d 1091, 1094 (Fed. Cir. 2004) ("[J]urisdiction under the Tucker Act requires the litigant to identify a substantive right for money damages against the United States separate from the Tucker Act[.]"); *see also Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (*en banc*) ("The Tucker Act . . . does not create a substantive cause of action; . . . a plaintiff must identify a separate source of substantive law that creates the right to money damages. . . . [T]hat source must be 'money-mandating.'"). Specifically, a plaintiff must demonstrate that the source of substantive law upon which he relies "can fairly be interpreted as mandating compensation by the Federal Government[.]" *Testan*, 424 U.S. at 400. And, the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question . . . . [the plaintiff] bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence.").

In addition to general jurisdictional considerations, a plaintiff's claim also must be justiciable. *See* U.S. Const. Art. III, § 2, cl. 1; *see also Flast v. Cohen,* 392 U.S. 83, 94 (1968) ("[J]udicial power of federal courts is constitutionally restricted to 'cases' and 'controversies.'").

It is now settled that the justiciability doctrines apply fully to this Article I courts.[4] *See Freytag v. Commissioner of Internal Revenue,* 501 U.S. 868, 889 (1991) ("Our cases involving non-Article III tribunals have held that these courts exercise the judicial power of the United States."); *see also Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003) ("The [United States] Court of Federal Claims, though an Article I court, . . . applies the same standing requirements enforced by other federal courts created under Article III."); *CW Gov't Travel, Inc. v. United States,* 46 Fed. Cl. 554, 557–58 (2000) (enumerating multiple grounds for applying the justiciability doctrines to Article I courts, in general, and to the United States Court of Federal Claims, in particular).

Even if a case satisfies the justiciability requirements of Article III, a case still may be unripe for adjudication if it is based on anticipated or hypothetical injuries. *See United Pub. Workers of Am. v. Mitchell*, 330 U.S. 75, 89 (1947) ("As is well known the federal courts established pursuant to Article III of the Constitution do not render advisory opinions. For adjudication of constitutional issues, concrete legal issues, presented in actual cases, not abstractions[,] are requisite. This is as true of declaratory judgments as any other field.") (internal quotation marks omitted); *see also Thomas v. Union Carbide*, 473 U.S. 568, 581 (1985) (explaining that a claim for relief is not ripe when it depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all") (internal quotation marks and citation omitted). Therefore, when reviewing an agency's decision for ripeness, the trial court must examine "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *overruled*

---

[4] 28 U.S.C. § 171(a), in relevant part, states, "The [United States Court of Federal Claims] is declared to be a court established under article I of the Constitution of the United States."

4

*on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Consequently, for a claim to be ripe for judicial review, a challenge to the agency's decision must meet both elements. *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1581 (Fed. Cir. 1993) ("Both prongs [*i.e.*, whether there is a present case or controversy and whether withholding judicial decision would cause undue hardship] must be satisfied before an Article III court may apply its adjudicative powers to a case's merits.").

A claim becomes moot when "the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). In other words, "actual controversy must remain at all stages, not merely at the time the complaint is filed." *Gerdau Ameristeel Corp. v. United States*, 519 F.3d 1336, 1340 (Fed. Cir. 2008) (citing *Steffel v. Thompson*, 415 U.S. 452, 460 n.10 (1974)). Therefore, to determine whether a case is moot, the court must examine whether: "(1) it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and, (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Cnty. of L.A. v. Davis*, 440 U.S. 625, 631 (1979) (internal quotation marks and citation omitted).

### B.     Standards For Motion To Dismiss.

#### 1.     Under RCFC 12(b)(1).

A challenge to the United States Court of Federal Claims' "general power to adjudicate in specific areas of substantive law . . . . is properly raised by a [Rule] 12(b)(1) motion[.]" *Palmer v. United States*, 168 F.3d 1310, 1313 (Fed. Cir. 1999); *see also* RCFC 12(b)(1) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: (1) lack of jurisdiction over the subject matter[.]"). When considering whether to dismiss an action for lack of subject matter jurisdiction, the court is "obligated to assume all factual allegations of the complaint to be true and to draw all reasonable inferences in plaintiff's favor." *Henke v. United States,* 60 F.3d 795, 797 (Fed. Cir. 1995).

#### 2.     Under RCFC 12(b)(6).

A challenge to the United States Court of Federal Claims' "[ability] to exercise its general power with regard to the facts peculiar to the specific claim . . . is raised by a [Rule] 12(b)(6) motion[.]" *Palmer*, 168 F.3d at 1313; *see also* RCFC 12(b)(6) ("Every defense to a claim for relief in any pleading must be asserted in the responsive pleading . . . . But a party may assert the following defenses by motion: . . . (6) failure to state a claim upon which relief can be granted[.]").

When considering whether to dismiss an action for failure to state a claim, the court must assess whether "a claim has been stated adequately" and then whether "it may be supported by [a] showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). The plaintiff's factual allegations must be substantial enough to raise the right to relief "above the speculative level." *Id.* at 555. The court must accept all factual allegations in the complaint as true and make all reasonable inferences in favor of the plaintiff. *Id.* at 555–56.

### C.  The Government's October 8, 2014 Renewed Motion To Dismiss.

#### 1.  The Government's Argument.

The Government argues that the court does not have subject matter jurisdiction. Gov't Mot. at 3. Justiciability stems from the "case or controversy" requirement set forth in Article III of the Constitution. Gov't Mot. at 3. "Although the 'case or controversy' requirement of Article III does not limit the [c]ourt's jurisdiction, this [c]ourt and other Article I courts have adopted many justiciability precepts based on prudential grounds." Gov't Mot. at 3 (citing *Travel, Inc. v. United States,* 46 Fed. Cl. 554, 556–58 (2000) (stating that mootness is a question of subject matter jurisdiction and that "[t]he constitutional 'case or controversy' justiciability doctrine is said to derive from Article III of the Constitution.")).

The Government also argues that the EPA's corrective action has rendered the July 29, 2014 Complaint moot, because "[Plaintiff] has obtained precisely the relief that it sought in its [C]omplaint," *i.e.*, "cancelation of RFQ and postponing its acquisition of network infrastructure equipment until EPA performs market research determining whether EPA's needs can be satisfied by products of other manufacturers, including [Plaintiff]." Gov't Mot. at 4. Therefore, the court should dismiss the July 29, 2014 Complaint, pursuant to RCFC 12(b)(1) or 12(b)(6). Gov't Mot. at 3 (citing *B&B Med. Servs., Inc. v. United States*, No. 13-463C, 2014 WL 3587275, at *5 (Fed. Cl. June 23, 2014) (unpublished) (stating that the court's mootness analysis was the same under either RCFC 12(b)(1) or 12(b)(6)); *Coastal Envtl. Grp., Inc. v. United States*, 114 Fed. Cl. 124, 130 (2014) ("Regardless of whether a moot claim should be dismissed for lack of subject matter jurisdiction or for failure to state a claim upon which the court could grant relief, the standard applied by the court in reviewing a motion urging dismissal of a claim as moot is the same[.]").

#### 2.  Plaintiff's Response.

Plaintiff asserts that the court retains subject matter jurisdiction, because until such time as the EPA has performed corrective action, "further relief is still available to [Plaintiff] and EPA's past actions in this procurement support a reasonable expectation that its violations of law and regulation will recur." Pl. Resp. at 1. Importantly, the EPA failed to identify the steps that it will take to conduct market research, so the court should retain jurisdiction until the EPA "demonstrate[s] satisfactory completion of its market research obligations[,] in accordance with 48 C.F.R. § 16.505(a)(4)(i)." Pl. Resp. at 2–3. In addition, the July 29, 2014 Complaint related not only to RFQ 179418, but also to the EPA's unlawful decision to limit the acquisition of network switching and routing hardware to Cisco products. Pl. Resp. at 3. There is nothing to prevent the EPA from employing an alternative contractual vehicle to further perpetrate similar actions as those alleged in the Complaint. Pl. Resp. at 3. Therefore, the EPA's actions demonstrate that the challenged activities will recur. Pl. Resp. at 3.

#### 3.  The Government's Reply.

The Government replies that the corrective action proposed by the EPA is precisely what Plaintiff requested in its second and third requests for relief. Gov't Reply at 2. Therefore, Plaintiff's concern that the EPA will issue an identical solicitation containing exclusively Cisco-brand products under a different contract vehicle is speculative and unwarranted. Gov't Reply at 2–3. Because the EPA has not yet undertaken any market research or made a final procurement

decision, there is no "present case or controversy between the parties, and no ripe claim over which this Court may exercise jurisdiction." Gov't Reply at 4.

Moreover, Plaintiff's concern that the EPA will "circumvent its competitive procurement obligation without fear of reprisal" is tantamount to "an allegation that the agency will act in bad faith." Gov't Reply at 4 (citing Pl. Resp. at 3).

The Government, however, asks the court only to presume that its officials act in good faith in executing the corrective action and find that "there can be no reasonable expectation of recurrence of a procurement error." Gov't Reply at 5.

### 4. The Court's Resolution.

Regarding ripeness, a plaintiff must demonstrate "the fitness of the issues for judicial decision." *Abbott Labs.,* 387 U.S. at 149. In this case, this requires showing that the EPA made a final decision in respect of RFQ 179418. *See NSK, Ltd. v. United States*, 510 F.3d 1375, 1384 (Fed. Cir. 2007) ("[A]n agency decision is not ripe for judicial review until the allegedly offending agency has adopted a final decision."). An agency's decision is considered final if it "marks 'the consummation of the agency's decision-making process,' *i.e.*, it must not be merely tentative or interlocutory, and . . . 'the action [is] one by which rights or obligations have been determined, or from which legal consequences will flow.'" *Id.* at 1385 (quoting *Bennett v. Spear*, 520 U.S. 154, 177 (1997)).

In this case, the EPA has not taken the required steps to demonstrate a final decision. First, the EPA has not made a final procurement decision, let alone a "tentative or interlocutory" one. *NSK, Ltd.*, 510 F.3d at 1385. In fact, the EPA has not, by its own admission, even conducted the preliminary market research that will precede any procurement decision. Gov't Reply at 4. In the absence of a final decision, no "rights or obligations have been determined" that would give rise to "legal consequences" that the court can adjudicate. *Bennett*, 520 U.S. at 178 (internal quotation marks and citation omitted).

On the other hand, Plaintiff's concerns about the EPA's failure to take corrective action are speculative. As a matter of law, anticipation of a future violation is not sufficient to make a claim ripe. *See Mitchell*, 330 U.S. at 89–90 ("[C]oncrete legal issues, presented in actual cases, not abstractions[,] are requisite[.]"); *see also Thomas*, 473 U.S. at 581 (involving "contingent future events that may not occur as anticipated, or indeed may not occur at all") (internal quotation marks and citation omitted). As such, Plaintiff's claims are premature, and the court has no jurisdiction.

As for mootness, the court is required to examine whether "it can be said with assurance that there is no reasonable expectation . . . that the alleged violation will recur, and, . . . interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Davis*, 440 U.S. at 631 (1979). By undertaking corrective action to cancel RFQ 179418 and delay

acquisition of network infrastructure equipment until the EPA conducts required market research, Gov't Notice at 1, the EPA has met both elements of the test.[5]

Plaintiff has not proffered clear and convincing evidence that EPA will act in bad faith, much less specific intent to injure Plaintiff. There is no indication that the EPA will circumvent the competitive procurement process. When an action depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all" the claim is unfit for judicial review. *Thomas*, 473 U.S. at 581. Since Plaintiff has failed to establish by clear and convincing evidence that the EPA acted or will act in bad faith, the court must presume the EPA will implement the corrective action in good faith. *See Am-Pro Protective Agency v. United States*, 281 F.3d 1234, 1240 (Fed. Cir. 2002) (stating that a Plaintiff must show "clear and convincing evidence" to overcome the presumption of the Government's good faith) (internal citations omitted). If the Government does not do so, Plaintiff may file another case under RCFC 40.2(a), which will be assigned to the undersigned.

## IV. CONCLUSION.

For these reasons, the Government's August 15, 2014 Motion To Dismiss is granted. *See* RCFC 12(b)(1), 12(b)(6). Accordingly, the Clerk of Court is directed to dismiss the July 29, 2014 Complaint, without prejudice.

**IT IS SO ORDERED.**

                                                s/ Susan G. Braden
                                                **SUSAN G. BRADEN**
                                                **Judge**

---

[5] If the court were to disregard the facts surrounding RFQ 179418 and consider only Plaintiff's remaining allegations, Plaintiff would have failed to state a claim on which relief could be granted pursuant to RCFC 12(b)(6).